IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER - DIVISION

ASH BABATUNDE BAKRE, # 784509
        Plaintiff,

Vs.                    CIVIL ACTION NO:

DEBORAH KENDALL, Head Physical Therapist, Beto I Unit;
JAMES BJORNSON, Physical Therapist, Beto I Unit;
DOCTOR ABRON, Physical Therapist, Michael Unit;
MICHAEL SIZEMORE, Program Manager, Beto I Unit;

DOE, The Respondent of the Step 2 Grievance;

Individually and in their Official Capacities,
        Defendants.

# MEMORANDUM IN SUPPORT

## I

## JURISDICTION & VENUE

1. This is a Civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color

1

of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff Bakre seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff Bakre's claims for injuctive relief are authorized by 28 U.S.C. Section 2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedure.

2. The Eastern District of Texas is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occured.

## II. PLAINTIFF

3. Plaintiff Ash Babatunde Bakre, is and was at all times mentioned herein a prisoner of the State of Texas in the custody of the Texas Department of Criminal Justice (T.D.C.J.). He is currently confined at Pack 1 Unit, 2400 Wallace Pack Road, Navasota, Texas 77868.

## III. DEFENDANTS

4. Defendant Deborah Kendall is the head of the

2.

Beto 1 Unit's Physical Therapist department who, at all times mentioned in this complaint, held a job as a University of Texas Medical Branch (UTMB)/TDCJ Physical Therapist, and is assigned to Beto 1 Unit, 1391 FM 3328, Tennessee Colony, Texas 75880.

5. Defendant James B.Jornson, is a Physical Therapist who, at all times mentioned in this complaint, held a job as a University of Texas Medical Branch (UTMB)/TDCJ Physical Therapist, and is assigned to Beto 1 Unit, 1391 FM 3328, Tennessee Colony, Texas 75880.

6. Defendant Michael Sizemore, is a Medical Department Program Manager who, at all times mentioned in this complaint, held a job as a University of Texas Medical Branch (UTMB)/TDCJ Program Manager, and is assigned to Beto 1 Unit, 1391 FM 3328, Tennessee Colony, Texas 75880.

7. Defendant Doctor Abron, is the head of the Physical Medicine and Rehabilitation (PMR) who, at all times mentioned in this complaint, held a job as a University of Texas Medical Branch (UTMB) TDCJ Physical Therapist, and is assigned to Michael Unit, 2664 FM 2054, Tennessee Colony, 75886.

3

8. Defendant Doe, is a Medical Grievance Investigator who, at all times mentioned in this complaint, held a job and assigned to Office of Professional Standards (UTMB)/TDCJ Health Services Division in Huntsville, Texas.

9. Each defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of State law.

# IV. FACT

10. For the record, in February, 1999 Plaintiff Bakre's Cervical spine and Lumbar spine were seriously injured by two T.D.C.J. officials at the Eastham Unit due to an unnecessary use of force attack which was witnessed to by Captain Todd Harris (at the time, now a retired senior warden) who, also make sure that Bakre wasn't written any disciplinary offense case in the matter, and because Bakre did nothing wrong; (Please see Exhibit A);

11. As a result of said injuries described above, Plaintiff Bakre was transported to the U.T.M.B. hospital at Gavelston in March, 1999 and underwent a

4

2-level Cervical corpectomy fusion at C4-C5 with anterior metal plate with multiple screws extending from C3 to C6; (Please see Exhibit B);

12. Plaintiff Bakre's Lumbar Vertebrae injury from the above described unnecessary use of force also left Bakre with Bulging annuli at L1, L2, L3, L4 and L5, worst at L4-L5. Bakre later suffers from chronic low back discomfort due to arthritis and disk disease on his Lumbar spine. (Please see Exhibit C);

13. In 2000, Plaintiff Bakre's neck and lower back was reinjured by two other T.D.C.J. officials at the Estelle Unit due to another unnecessary use of force attack. Bakre was sent to the U.T.M.B. hospital at Galveston again for treatment and was issued a walking cane because of the back and hip pain he daily experience and difficulty in walking; (Please see Exhibit D);

14. On or about May 05, 2000 Plaintiff Bakre was interviewed and listed in the Physical Handicapped Offender Program (PHOP)(now ADS) and was assigned to a Case worker, due to the severity of his spinal —

5

injuries.

15. At all time relevant to this case, Plaintiff Bakre has been complaining to the medical staffs that the regular TDCJ issued mattress aggravates his spinal injuries, that whenever he lay down on his back or on his side, the regular mattress generates annoying painful compression against his neck and back.

16. In September 2014, as soon as Plaintiff Bakre saw fellow inmates with Medical Geo Foam Mattress, Bakre inquired the source from them and was told that the Unit's medical department is (issueing) issuing out the Geo Foam Mattress.

17. Plaintiff Bakre immediately submitted a Medical Sick-call request to be seen by a medical provider in respect of his constant spinal pain and ardent need for a Geo foam mattress.

18. On September 30, 2014 Plaintiff Bakre was seen by Nurse Jennifer Castlow, LVN who later made the following clinic note: "Offender (plaintiff Bakre) put in sick call to get a Geo-mattress for his back pain. Explained to offender that we received note from provider that there are no more mattresses. Explained

6

this to offender and stated he understood. Offender stated he does not need to be seen for anything else."

19.  In 2015, Plaintiff Bakre saw that the medical department was issuing out the Geo foam mattresses to fellow inmates once again, and his efforts to acquire one was always turned down.

20.  Over the years, pain relief medications were given and or prescribed for plaintiff Bakre by numerous providers including Doctor Harrold Clayton, Doctor Haque, and Physician Assistance Cheryl Egan.

21.  On or about Friday, March 16, 2018 Plaintiff Bakre woke up from sleep in the middle of the night to an excruciating pain associated with electric discharges emitting directly from his lower cervical spine, then to the edge of his right shoulder and radiated straight down his right hand into his middle finger; as a result of the compression generated by the regular TDCJ issued mattress on his neck and back;

22.  Plaintiff Bakre's entire right arm became very weak. Numbness, electrict discharges and frozen pain engulfed his right shoulder and hand down

7

to his right hand fingers tips; Plaintiff Bakre's right hand had shrank from its original normal size as a result of the said injury;

23. Some nights and due to the severity of the frequent electric discharges and frozen pain, Plaintiff Bakre wished that his right hand and shoulder are somehow detachable so that he can just pluck them off of his entire body ever since the midnight of March 16, 2018;

24. Plaintiff Bakre's right hand, wrist and fingers have not been fully functioning well since the mid-night of March 16, 2018, and he has been having occasional piercing sensation in his right hand-palm;

25. Three of Plaintiff Bakre's right hand fingers have and remained folded up lacking functioning ever since the midnight of March 16, 2018;

26. Plaintiff Bakre submitted a sick-call and was seen by a nurse who gave plaintiff Bakre a referral on March 24, 2018 to be seen by a medical doctor;

8

27. Plaintiff Bakre was made to believe that he probably was having a stroke by (inmate doctors) fellow inmates;

28. On April 4, 2018 Plaintiff Bakre was seen and examined by doctor Haque M.D., who wrote the following report:
   S: "Complaint of right upper extremity pain and numbness of right UE. H/O neck injury, S/P surgery.

   O: GEN: In moderate distress

   MSK: Decreased sensation to pin prick of whole right upper extremity noted. Decreased hand grip on the right. Restricted ROM of neck noted.

   A: OA with radiculopathy
      IBUPROFEN 800 MG."

   Doctor Haque referred Plaintiff Bakre to the Beto 1 unit's Physical Therapy Department for immediate treatment of his newly onset – Cervical nerve syndrome injury.

29. On April 24, 2018, when Plaintiff Bakre didn't hear from the Physical Therapy department, he sent an I-60 to defendant Deborah Kendall stating the following:

9

30. "Dear Doctor Kendall, Three of my fingers are folded over and will not follow the rest to come up. My neck, right shoulder, down to the very tip of my right hand fingers stays numbed and hurt 24/7; for more than 30 days now. Please schedule me for an appointment to see you. Thanks." (Please see Exhibit E).

31. On April 27, 2018, defendant Kendall sent a response to Plaintiff Bakre's I-60 of April 24, 2018, stating that: "You are scheduled in June." (Please see Exhibit E).

32. On Wednesday, June 13, 2018 Plaintiff Bakre was evaluated by defendant James Bjornson under the close watch of another physical therapist Mr. Clinton Herring.

33. Plaintiff Bakre reliterate reference paragraphs 10-25 to defendant James Bjornson during the evaluation process, and the following was derived and reported by defendant Bjornson:

34. "Offender is a 61 year old male who is referred to Physical Therapy for complaint of neck pain, right scapula pain and right upper extremity

10

pain and numbness. Patient reports he has had neck, scapula and upper extremity symptoms after fusion in 1999 . . . . "

35. On Thursday, June 28, 2018, Plaintiff Bakre started his physical therapy treatment with physical therapist Clinton Herring.

36. On Tuesday, July 3, 2018, and Thursday, July 5, 2018 defendant Bjornson conducted plaintiff Bakre's physical therapy treatment, and thereafter, physical therapist Herring covers Bakre's physical therapy treatment on Tuesdays, and defendant Bjornson treats plaintiff Bakre on thursdays.

37. On Thursday, July 5, 2018, defendant Bjornson promised to place an order for a right hand wrist brace which will help in the healing of plaintiff Bakre's injured hand.

38. On Tuesday, July 17, 2018, plaintiff Bakre enquired about his needed right hand wrist brace and the medical foam Geo mattress

11

during his physical therapy treatment session with Clinton Herring, but Herring advised plaintiff Bakre to ask defendants Bjornson and Kendall on his next treatment date with Bjornson.

39. On Friday, July 13, 2018, Plaintiff Bakre asked for the issuance of a Geo foam mattress from defendant Kendall who, told Bakre to check back with her the following week.

40. On Monday, July 16, 2018, doctor Haque refused to renewed plaintiff Bakre's pain – relief medication due to Bakre's heart problem.

41. On Thursday, July 19, 2018, Plaintiff Bakre was scheduled two separate appointments within Beto 1 Unit's physical therapy department, one is for his ongoing physical therapy treatment with defendant Bjornson; and the other appointment was with Mr. Jason Armstrong, a caseworker number 154, who comes from Estelle Unit in Huntsville, Texas on a yearly basis to check on plaintiff Bakre and other inmates' well being and needs. After plaintiff Bakre showed his new

12

Cervical nerve syndrome injury and expressed its causation and seriously needed Geo foam mattress to Mr. Armstrong, Mr. Armstrong then brought up defendant Doctor Abron's name and also wrote the following report:

42. "Patient (plaintiff Bakre) request to be issued a medical (Geo) mattress. Patient reports he discussed it with rehabilitation department physical therapist and was advised to contact the unit provider. Patient reports the unit provider advised him that they do not currently provide medical mattresses and to talk to the rehabilitation department. Patient inquired as to who else he may discuss obtaining a medical mattress from. Advised patient he may submit a request to his provider to discuss a referral to Physical Medicine Rehabilitation (PMR). Patient verbalized his understanding."

43. On the same Thursday, July 19, 2018 defendant Bjornson assured plaintiff Bakre that he (defendant Bjornson) had placed an order for plaintiff Bakre's needed right hand wrist brace.

13

44. On or about Monday, August 6, 2018, Plaintiff Bakre was seen by the Regional Medical Director Doctor Harrold Clayton in the matter of his ongoing Cervical (disc) nerve syndrome injury pain, suffering and urgent need for a Medical Geo foam mattress. Doctor Clayton later wrote the following referral in his report :

45. "Referral for GEO mattress due to "severe disc disease" involving cervical spine; presently undergoing (physical therapy) P.T.
Plan is as follows: Review/Update TDCJ Restrictions/ PULHES:
Referral to P.T. "

46. Doctor Harrold Clayton also refused to prescribe pain relief medication for plaintiff Bakre because Of his Heart problem.

47. On Monday, August 6, 2018, Plaintiff Bakre left doctor Clayton's office and proceeded to defendant Kendall's office to let her know that doctor Clayton had just referred him back to the physical therapy department for the issuance of a Geo foam Mattress. Defendant Kendall became upset and verbally told

plaintiff Bakre: "You're never gonna get it, unless you're paralyzed the Geo medical mattress will not be issued to you."

48. On Thursday, August 9, 2018; and Thursday, August 16, 2018; and Thursday, August 30, 2018, plaintiff Bakre inquired about his seriously needed right hand wrist brace from defendant Bjornson who each time said: They're (the wrist brace) on order, not here yet."

49. On Tuesday, September 4, 2018, Plaintiff Bakre lamented to defendant Kendall about the excruciating neck, shoulder, right hand and back pain he daily suffered and endured and his ardent need of a Geo mattress, but defendant Kendall said: "Unless you're paralyzed, the Geo mattress will not be issued to you." Plaintiff Bakre then asked if defendant Kendall would put what she's been saying on paper, and defendant Kendall said she would.

50. On or about Thursday, September 6, 2018, Plaintiff Bakre sent an I-60 to defendant Kendall with the following: "Dear Dr. Kendall, For brevity, clarity and

15

record purpose, kindly reiterate what you verbally told me on or about August 6, 2018, and September 4, 2018 that quote: "Unless you're paralyzed, the GEO medical mattress will not be issued to you." And also, that Doctor Abron is not authorized to make any ordering of said GEO mattress for inmates. (Please see Exhibit E).

51. On or about September 6, 2018, defendant Kendall sent a response to plaintiff Bakre's I-60 of September 6, 2018 with the following statement: "It is my understanding that GEO mattress are for patients in the infirmary or patients/offenders with actual paralysis. I do not issue GEO mattress. Doctor Abron makes recommendations for the unit provider to decide." (Please see Exhibit F).

52. On or about Tuesday, September 11, 2018, during Plaintiff Bakre's physical therapy treatment session with Mr. Herring, the following dialogue took place between plaintiff Bakre and defendant Kendall:

Plaintiff Bakre: How are you doing doctor Kendall?
Defendant Kendall: What's up Bakre?

Plaintiff Bakre: You know that I'm never gonna get healed as long as I still sleep on the same

type of regular mattress which got me injured in the first place. I really need a Geo foam mattress.

Defendant Kendall: Bakre, you'll have to be paralyzed before you can be issued a Geo Mattress.

Plaintiff Bakre: But you know about my medical condition and injuries.

Defendant Kendall: Yes. I know about your injuries but you aint getting a Geo Mattress.

Plaintiff Bakre: Your department is still issuing the Geo foam mattresses to inmates who claimed to be peeing and or defecating on themselves even though many of them are not being truthful about their medical condition.

Defendant Kendall: I don't know what to say to that.

Plaintiff Bakre: I hurt everyday, most especially at night while laying on my regular mattress, having no pain relief medication to subdued my suffering and pain, and you're still telling me that I cannot be issued a Geo Mattress.

Defendant Kendall: That's just the way it is.

17

53. After Plaintiff Bakre's physical therapy treatment session on Tuesday, September 11, 2018, physical therapist Clinton Herring wrote in his medical report: "Offender (Bakre) continuously ask about getting medical (Geo) mattress."

54. On Tuesday, September 18, 2018, After plaintiff Bakre's physical therapy treatment session with Herring, Mr. Herring reported: "ASSESSMENT: ... 4th and 5th finger continue to lack AROM extension. Right wrist extension strength improving."

55. On Wednesday, September 19, 2018, Plaintiff Bakre had an appointment with doctor Harrold Clayton who, seemed upset to find out that defendant Kendall still refused to assist plaintiff Bakre acquire a Geo medical foam mattress. Doctor Clayton therefore referred Plaintiff Bakre to the Physical Medicine Rehabilitation (PMR) with the following report:

56. "Request referral to Physical Medicine and Rehabilitation for GEO mattress.
OBJECTIVE: Lab: See EMR

18

DIAGNOSIS SPECIFIC HISTORY & CLINICAL FINDINGS/SUPPORTING LAB AND X-RAY FINDINGS:

61 Year old African American male with extensive degenerative arthritis of spine; has undergone Physical Therapy intermittently for an extended period of time. Continue to experience considerable pain and discomfort; discussed with PT that Offender may benefit from evaluation for a GEO mattress at this time.

PROVISIONAL DIAGNOSIS: OA/DDD

REQUESTED TREATMENT or PROCEDURE: Evaluate for GEO mattress.

(Radiology contrast studies require current BUN/creatinine documented on referral. Specify requested procedure and anatomical location)."

57. On Tuesday, October 2, 2018, Mr. Herring told Plaintiff Bakre that he will be discharge from the physical therapy treatment on his next treatment with defendant Bjornson.

58. On Thursday, October 4, 2018, Plaintiff Bakre was examined and discharged from physical therapy treatment session by defendant James Bjornson who, also advised Plaintiff Bakre that someone will be coming to talk to him about the Geo mattress at the end of October 2018.

19

59.  On or about November 12, 2018, Plaintiff Bakre filed a Step 1 Grievance in the matter upon which defendant Michael Sizemore totally failed to carry out an adequate investigation that would have helped to resolved plaintiff Bakre's Geo foam mattress and an appointment with the Neurosurgeon Specialist at the UTMB hospital at Galveston for a possible surgery to fix his Cervical disk syndrome injury.
(Please see Exhibit G).

60.  On November 28, 2018, Plaintiff Bakre sent an I-60 to defendant James Bjornson in respect of his serious needed wrist brace, it reads:
"Mr. Bjornson, Between July 2018, and October 2018, You assured me numerous times that you placed an order for my needed right-hand wrist brace. However, on November 28, 2018, Ms. Fresner (Flesner) checked her office computer and confirmed that said order was (not showing) never made. What is going on Mr. Bjornson ??? "(Please see Exhibit H)

61.  On Wednesday, December 5, 2018 Defendant Bjornson sent a reply to plaintiff Bakre's I-60 of November 28, 2018, it reads: "Wrist Brace on order, Will lay-in and issue when order arrives."
(Please see Exhibit H).

20

62. On Wednesday, December 5th, 2018 Plaintiff Bakre sent an I-60 to defendant Kendall in respect of the referral sent to defendant Abron by doctor Clayton on behalf of Plaintiff Bakre : "Dear doctor Kendall, As you instructed, Please give me an update on my referral to the Physical Medice Rehabilitation (PMR) in respect of my needed GEO medical foam Mattress. I have not heard from the PMR since Dr. Harrold Clayton M.D's referral date of September 19, 2018. (2 months and 16 days)." (Please see Exhibit I)

63. On Wednesday, December 12, 2018, defendant Deborah Kendall sent a response to plaintiff Bakre's I-60 of December 5th, 2018 with the following : "It was denied. You have not had any recent surgery per Dr. Abron. You are not eligible for Geo Mattress." (Please see Exhibit I).

64. On January 10, 2019 Plaintiff Bakre filed his Step 2 appeal Grievance in the matter and received a denied response made by defendant Doe on January 25, 2019. (Please see Exhibit I).

21

65. On Sunday, May 5th, 2019, Plaintiff Bakre was layed-in to see Physician Assistant Cheryl EGAN who showed a heightened state of concern for plaintiff Bakre's ongoing cervical disc syndrome injury and distressful pain and refer plaintiff Bakre for neck/chest X-rays; Nuclear Medicine/ Intervention Radiology; and an immediate transfer from George Beto I Unit to a smaller dorm-like medical unit.

66. On Tuesday, May 7th, 2019 plaintiff Bakre's Cervical spine X-ray was perform and its report was interpreted as follows:

"NEW ONSET RUE WEAKNESS AND ATROPHY: Anterior cervical fusion and discectomy are demonstrated at C3-C6. No perihardware lucency or hardware fracture identified.

The odontoid view is unremarkable.

There is severe spondylotic change at C6-C7 Manifested by disc space narrowing, endplate Sclerosis and prominent segment disease.

The prevertebral soft tissues are unremarkable."

Interpreted by: Hussain, Huda NPI: 1144677154.

22

67. On Tuesday, May 14, 2019, plaintiff Bakre was transferred on an ambulance transportation from Beto I Unit to Pack I Unit per Ms. Cheryl Egan, P.A's recommendation.

68. On Thursday, June 6, 2019, plaintiff Bakre was taken to the UTMB hospital at Galveston for "Nerve (electrical) stimulation" and "Myelography" treatment at the Nuclear Medicine / Intervention Radiology Department; per Ms. Cheryl Egan's referral.

## V. EXHAUSTION OF LEGAL REMEDIES

69. Plaintiff Bakre filed the administrative prisoners Step 1 grievance on or about November 12th 2018, to try to resolve the problem. On or about December 27, 2018, plaintiff Bakre was sent a response made by defendant Michael Sizemore stating that the grievance had been denied. (please see Exhibit G).

70. On January 10, 2019, Plaintiff Bakre appealed the denial of the step 1 grievance, and received a

23

response made by defendant Doe denying the appeal on or about February 20, 2019. (Please see Exhibit I).

# VI. LEGAL CLAIMS FOR RELIEF

71.   Plaintiff Bakre reallege and incorporate by reference paragraphs 1 – 70.

72.   The Second Circuit has concluded that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000); Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994); Todaro v. Ward, 565 F.2nd 48, 52 (2nd Cir. 1977).

73.   Plaintiff Bakre's previous and the new onset Cervical spine/Cervical disc syndrome injuries ; Previous and existing Lumbar spine injury; along with his right shoulder pain, right hand freezing Numbness associated with electric discharges radiating to his right hand wrist and fingers are all known to all the defendants in this case. These

24

facts are also backed by evidence, being medical records, Laboratory and X-rays findings, and also Clinical reports.

74. Defendant Abnor's action of denial of seriously needed medical Geo foam mattress to plaintiff Bakre violated and continues to violates plaintiff Bakre's rights under the Eighth Amendment to the United States Constitution, and is causing plaintiff Bakre extended daily agonizing pain, suffering, extended aggravating physical injury, intentional infliction of emotional distress and mental anguish.

75. Defendant James Bjornson's action of total failure to provide plaintiff Bakre's seriously needed medical wrist brace and the falsified medical treatment reports violated and continues to violate plaintiff Bakre's rights under the Eighth Amendment of the United States Constitution, and is causing plaintiff Bakre continuous daily agonizing pain, suffering, extended aggravating physical injury, intentional infliction of emotional distress and mental anguish. In fact, as of the date of filing this civil action, defendant James Bjornson hasn't yet provide plaintiff Bakre with the said wrist brace.

76. Defendant Deborah Kendall's action of ceaseless

25

obstructing the progression of Plaintiff Bakre's Geo foam mattress (medical need) from defendant Abnor violated and continues to violate plaintiff Bakre's rights under the Eighth Amendment of the United States Constitution, and is causing plaintiff Bakre continuous suffering on daily basis along with mental anguish, intentional infliction of emotional breakdown, pain and physical injury.

77. Defendant Michael Sizemore's action of total failure to report elicit fact, hindered and delayed the progress of plaintiff Bakre's seriously needed Geo medical foam mattress issuance, and Neurosurgeon Specialists scheduled appointment for a possible surgery on his new onset cervical disc syndrome injury violated plaintiff Bakre's rights under the Eighth Amendment of the United States Constitution, and is causing plaintiff Bakre continuous daily suffering, mental anguish, pain, intentional infliction of emotional distress and physical injury.

78. Defendant Doe's action of total failure to report elicit fact, hindered and delayed the progress of plaintiff Bakre's seriously needed Geo medical foam mattress issuance and Neurosurgeon Specialists scheduled appointment at the UTMB Hospital at

26

Galveston for possible surgery on his new onset cervical disc syndrome violated and continues to violate plaintiff Bakre's rights under the Eighth Amendment of the United States Constitution, and is causing plaintiff Bakre continuous daily pain, suffering, emotional breakdown, mental anguish and physical injury.

79. Honorable Courts usually agree that a prisoner can show a serious medical need if the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Estelle V. Gamble, 429 U.S. 97,104 (1976); Jett V. Penner, 439 F. 3d 1091, 1096 (9th Cir. 2006).

80. Each and every time Doctor Clayton referred plaintiff Bakre to the Physical Therapy department for the issuance of a Geo medical foam mattress, defendant Kendall shuts down said referrals.

81. After plaintiff Bakre's referrals was maliciously denied by defendant Kendall, doctor Clayton who is the regional medical director, sent another referral with full medical report on behalf of plaintiff Bakre to defendant Abnor, but defendant Abnor also denied said referral citing that plaintiff Bakre would have to undergo another neck/back surgery for him to be issued said mattress.

27

82. Both defendants Kendall and Abnor conspired together and were heedless to doctor Clayton's repeated referrals sent to them on behalf of plaintiff Bakre's serious medical needs a violation of plaintiff Bakre's rights under the Eighth Amendment of the United States Constitution.

83. The Eighth Amendment protects this plaintiff Bakre's rights to medical care, the Constitution guarantees this rights to plaintiff Bakre. The Supreme Court explained that this is because "[a]n inmate must rely on prison authorities to treat his medical need; if the authorities fails to do so, those needs will not be met." Estelle v. Gamble, 429 U.S. 97, 103 (1976). In order words, if a doctor says you need treatment, or your need is obvious, then it is probably a "serious medical need." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

84. The Correctional Managed Health Care (CMHC) policy A-02.1 regarding Responsible Health Authority states:

PURPOSE: To establish responsibility for the health care provided offenders of the Texas Department of Criminal Justice.

28

POLICY: (1) Each facility will have a designated health authority Texas Tech University health Service Center (TTUHSC)/management team University of Texas Medical Branch (UTMB). <u>Clinical Judgments rest with a Designated Licensed Responsible Physician</u>.

85. When doctor Harrold Clayton referred Plaintiff Bakre to be evaluated by defendant Abnor for the issuance of a Geo medical foam mattress, he (doctor Clayton) was simply instructing defendant Abnor to "examine (inspect) and judge plaintiff Bakre's injury carefully," based on direct observation of (the patient) plaintiff Bakre and in accordance with the CMHC policy A-02.1, which statute defined a duty that is been breached by all the defendants in this case. (Please see referenced paragraphs 44,45 & 55; 60 & 61; 59 & 64 respectfully).

86. One court described a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir 1994)</u>.

87. Defendant Abron's failure to adequately provide

Plaintiff Bakre with a Geo Medical foam mattress to alleviate his daily neck and back pain surely constitutes deliberate indifference to serious medical needs of Plaintiff Bakre who suffers chronic pain from neck/back pain injury previously caused by TDCJ officials, and the new onset Cervical disk Syndrome caused by the regular TDCJ issued mattress, in violation of the Eighth Amendment rights.

88. Defendant James Bjornson's fabricated report and total failure to adequately provide plaintiff Bakre with a right-hand-wrist brace to help in the healing of his injured wrist and fingers constitutes deliberate indifference to serious medical needs of plaintiff Bakre who suffers chronic pain from new onset cervical disk Syndrome caused by the regular TDCJ issued mattress in violation of the Eighth Amendment rights.

89. After being apprised of plaintiff Bakre's injury and serious medical needs situation, defendant Michael Sizemore fabricated false information in order to concealed the wrongs of defendants Kendall and Abnor, and thus prevented plaintiff Bakre from receiving adequate medical care needed for his neck and back injuries and the new onset cervical disk syndrom, a violation of Bakre's Eighth Amendment rights.

30

90. It was held in <u>Brock v. Wright</u>, 315 F.3d 158, 159 (2nd Cir. 2002) that proof of a denial of medical treatment that caused or perpetuates pain is sufficient for an inmate to prove that he or she suffers from serious medical condition.

91. At no time did plaintiff Bakre told defendant Bjornson or anyone else that the causation of his newly onset Cervical syndrome injury was due to his writing and that his goal was to be abled to return to writing. On a serious note, there has never been a report of any human being who developed a Cervical disc (nerve) syndrome from writing — how indeed incongruous is the false statement of defendant Bjornson which was later incorporated in defendants Sizemore and Doe's response in the Step 1 and Step 2 grievance and in order to ignore plaintiff Bakre's repeated outcries for extreme pain and suffering. (Please see Exhibits G, and J).

92. The language of the Step 2 grievance response failed to address plaintiff Bakre's complaint, because it contains no truism. Firstly, nowhere in the entire CMHC Policy G-59.3 does it document anything about the Geo medical foam mattress or its issuance.

31

The primary and main purpose of the CMHC Policy G-59.3 is: "to assure that offenders with unsafe performance of major functional activities, as determined by a treating provider, have the opportunity to obtain medical _prostheses_ and _orthotic devices_. Furthermore, Plaintiff Bakre's medical "PULHES" chart indicates the following report:

| | P | U | L | H | E | S |
|---|---|---|---|---|---|---|
| DESIGNATOR | 3 | 3 | 3 | 1 | 2 | 1 |
| CODES | M | C | C | A | B | A |
| MODIFIER | P | P | P | | P | |

U = Upper extremities: This factor concerns the arm, hands, shoulder girdle, and spine (Cervical and Thoracic) in regard to strength range of motion and general efficiency;

L = Lower extremities: This factor concerns the feet, legs, pelvic girdle, lower back, and lower spine (Lumbar and Sacral) in regard to strength, range of motion and general efficiency;

C = Chronic medical condition; and

P = Permanent: Meaning no change in condition is expected.

32

93. With the above "PULHES" showing, it is indeed a misstatement of the Step 2 grievance respondent (defendant Doe) to say; back and neck pain are not listed on Plaintiff Bakre's chronic care problem list, when in fact neck and back injuries and pain are both indicated as permanent chronic medical problem (3CP) for plaintiff Bakre ever since he was listed in the PHOP/ADS program on May 05, 2005.

94. Defendant Doe's action of complete failure to report elicit fact hindered and surely delayed the progress of plaintiff Bakre's seriously needed GEO medical foam mattress issuance, and also the Neurosurgeon specialists scheduled appointment for possible surgery on his newly onset Cervical disk (nerve) syndrome violated and continues to violate plaintiff Bakre's rights under the Eighth Amendment of the United States Constitution, and is causing plaintiff Bakre continuous daily suffering, pain, mental anguish, physical injury, and intentional infliction of emotional distress.

95. Each of the defendants in this case is in a position of authority and could, presumably order that plaintiff Bakre receive a Geo medical mattress.

33

96.   "Because the provision of medical care for a prisoner is not explicitly part of the sentence imposed, that care inadequacy constitutes a "Cruel and unusual punishment" only if the government actor, at a minimum, knew the care provided or withheld presented a serious risk to the inmate and consiously disregarded that risk." Rhinehart v. Scutt, 894 F.3d 721 (6th Cir. 2018).

97.   The subordinated living condition of Plaintiff Bakre shouldn't be any reason for defendants Abnor, Kendall, Bjornson, Sizemore and Doe (collectively and individually) to destroy plaintiff Bakre's healthy living ability by means of inadequate medical care.

98.   This honorable court is preeminently aware of the state's oft-repeated violations of Federal law and rules for deliberately and indifferently withholding needed medical care.

99.   The court held in Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996) that : Ignoring a request for medical treatment is a form of cruel and unusual punishment "Provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized." Plaintiff Bakre experience pain everyday since March 16, 2018.

34

100. Both defendants Sizemore and Doe are in a position of authority and could, presumably, order that plaintiff Bakre is sent to the Neurosurgeon Specialist within the UTMB hospital at Galveston for a possible surgery of his cervical disk (nerve) Syndrome injury, but they chose not to; How absurd and inhumane?

101. Whenever night falls, the thought and fear of the inevitable intensified crucial neck, shoulder, lumbar and right hand pain associated with freezing numbness, and sometimes electric discharges, which awaits plaintiff Bakre made him to lose sleeps knowing that his skeletal and nerves injuries will then combinely comes alive in magnitude pains on the TDCJ issued regular mattress.

102. The Sixth Circuit recently concluded in <u>Rhinehart</u> <u>V. Scutt</u>, 894 F.3d 721 (6th Cir. 2018) that: When prison officials fail to provide treatment for an inmate's serious medical condition, the inmate has endured an objectively serious deprivation. So when an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided

35

treatment so cursory as to amount to no treatment at all. Each of the defendants in this case breached the trust of professionalism which they all owed to plaintiff Bakre.

103. Plaintiff Bakre has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff Bakre has been and will continue to be irreparably injured by the conducts of the defendants in this cause of action unless this court grants the declaratory and injuctive relief which plaintiff Bakre seeks.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bakre respectfully prays that this court enter judgment granting plaintiff:

104. A (declaratory) declaration that the acts and omissions described herein violated plaintiff Bakre's rights under the Constitution and laws of the United States; and

36

105.   A preliminary and permanent injunction ordering each of the defendants in this case to provide plaintiff Bakre with a medical GEO foam Mattress; necessary surgery by Neurosurgeon Specialists at the UTMB hospital at Galveston; a Right-hand Wrist Brace; Undelayed yearly issued medical Footwear; a Soft neck Brace; a Back brace; and not to retaliate against Plaintiff Bakre in any form or manner because of this suit; and

106.   Granting plaintiff Bakre a Compensatory damages in the dollar amount deems just, proper and equitable against each defendant; jointly and severally, for the everyday pain and suffering and continuing diminished use of his right hand and three fingers; and

107.   Punitive damages in the dollar amount deems just, proper and equitable against each defendant; and

108.   A jury trial on all issues triable by jury; and

109.   Recovery of plaintiff's cost in this suit; and

37

110. Any additional relief this court deems just, proper, and equitable.

Dated: June __28__, 2019

Respectfully Submitted
Ash B. Bakre #784509
Pack 1 Unit
2400 Wallace Pack Rd.
Navasota, Texas 77868

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Navasota, Texas on June __28__, 2019

Ash B. Bakre

38

276304Q          BAKRE, ASH BARBATUNDE        Status: O
DOB: 03/02/1957     Sex: M               Loc:     TDC

Physician:           *EXHIBIT A*

    ALLEN, STANLEY D, MD
    301 UNV BLD RT 478
    GALVESTON, TX     77555

    2537214 02/25/1999 13:15  Requested by: STEPHENSON, KELLY W, MD
      SPINE, CERVICAL 3 VIEWS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CERVICAL SPINE

There are no similar exams available for comparison.

There is old post traumatic deformity with anterior fusion at the
C4 - C5 level with incursion of the C5 vertebral body into the
canal. Prominent anterior vertebral body osteophytes with disc
space narrowing are seen at C5 - C6 and to a lesser extent at C6 -
C7.

A tiny bone fragment is seen off the spinous process of C3

Personally interpreted by:

Suzanne W Blackwell, MD  /signed by/ SUZANNE W BLACKWELL, MD

Transcribed on: 03/01/1999 16:37     by Medspeak Interface
Finalized on: 03/01/1999 16:37     by Medspeak Interface

                    OFFICIAL COPY

                                          C0155

276304Q     BAKRE, ASH BARBATUNDE

DOB: 03/02/1957    Sex: M

Status: O
Loc:    TDC

Physician:

BONNEN, JAMES G, MD
301 UNV BLVD RT0517
GALVESTON, TX    77555

*EXHIBIT B*

2599271 05/24/1999 16:20   Requested by: YEH MD, PETER J
   SPINE, CERVICAL 5 VIEWS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CERVICAL SPINE

Since 3/8/99, the previously described anterior fusion of C3
through C6 has undergone significant interval healing. A healed
bone strut is seen between these vertebral bodies together with a
side plate and multiple screws affixing the anterior aspects of
these vertebral bodies. The alignment is satisfactory.

Changes of spondylosis are present at C6 - C7 with disc space
narrowing, eburnation, and marginal osteophyte formation. There
appears to be spinal stenosis in the lower cervical spine.

Larry Edwards, MD /signed by/ LARRY EDWARDS, MD

Personally interpreted by:

Rajendra Kumar, MD /signed by/ RAJENDRA KUMAR, MD

Transcribed on: 05/25/1999 13:30    by Medspeak Interface
   Finalized on: 05/25/1999 14:07    by Rajendra Kumar, M.D.

OFFICIAL COPY

0329

Case 6:19-cv-00298-JDK-KNM    Document 1-2    Filed 07/03/19    Page 41 of 50 PageID #:  49

c:\temp\104771362.tif printed by mivap. (Page 1 of 3)

Scanned by SANDERS, BRENDA L CCA in facility BETO 1 on 07/08/2008 13:26

*EXHIBIT C*

## Results History

MRI LUMBAR, SPINAL CANAL (Order# 26374673)

**Entry Date** 6/24/2008
**Component** MRI LUMBAR, SPINAL CANAL:
**Results** • • • • • • • • • • • • • •FINAL• • • • • • • • • • • • • • • •
MRI LUMBAR SPINE

HISTORY: Back pain

FINDINGS:

Bulging annuli are present at all levels worst at L4-L5. At this
level, there is bilateral neural foraminal narrowing without canal
stenosis.
**Comment:**
CANO, OSCAR , MD
Personally interpreted by:
GUINTO, FAUSTINO , MD /Signed/

**Entry Date** 6/24/2008
**Component** MRI LUMBAR, SPINAL CANAL:
**Results** • • • • • • • • • • • • •PRELIMINARY• • • • • • • • • • • • • • • •
MRI LUMBAR SPINE

HISTORY: Back pain

FINDINGS:

Bulging annuli are present at all levels worst at L4-L5. At this
level, there is bilateral neural foraminal narrowing without canal
stenosis.
**Comment:**
CANO, OSCAR , MD
Personally interpreted by:
GUINTO, FAUSTINO , MD

A16

THE UNIVERSITY OF TEXAS MEDICAL BRANCH HOSPITALS-GALVESTON, TEXAS
UNIVERSITY HOSPITAL CLINICS

DEPARTMENT OF SURGERY
DIVISION OF NEUROSURGERY            003

RE : BAKRE, ASH
UH#: 276304Q                *EXHIBIT D*
DOV: 11/20/2000
TDC#: 784509

HISTORY OF PRESENT ILLNESS: Mr. Bakre is a 43-year-old black male who has a history of undergoing a 2-level cervical corpectomy at C4-5 with anterior plate and fusion in March 1999. He has had problems with chronic neck pain and residual myelopathy ever since his surgery. His neck pain had been exacerbated he states when he was thrown to the ground in his unit. A repeat MRI of his cervical spine demonstrated no spinal or foraminal stenosis.

PHYSICAL EXAMINATION: He continues to have good strength in both upper and lower extremities. His reflexes remain brisk and he continues to have a severely myelopathic gait.

ASSESSMENT/DIAGNOSIS: Chronic neck pain after a 2-level corpectomy for severe spinal stenosis. He continues to have residual myelopathy which impairs ambulation.

PLAN/OPTIONS: We will order some physical therapy for Mr. Baker twice a week for 3 months. I will also order a TENS unit to see if this helps with his muscle spasms in the back of his neck. Many of his pain medicines cause his stomach to be irritated, so he will just take Tylenol extra-strength for pain relief. He will wear a soft collar p.r.n. We will give him a cane to aide his ambulation as he is at a risk for falls. He will followup with Telemedicine Clinic in 3 months.

Erwin S. Lo, M.D.
Department of Surgery
Division of Neurosurgery

Michel                    Lacroix,                    M.D.
Department of Surgery
Division of Neurosurgery

ESL/MRC79  D:11/20/2000  T:11/21/2000  J#:03160

Original: Medical Records

OUTPATIENT CLINIC NOTE

AN ADVISORY

DEAR DR. KENDALL,   EXHIBIT E

THREE OF MY FINGERS ARE FOLDED OVER
AND WILL NOT FOLLOW THE REST TO COME
UP.

MY NECK, RIGHT SHOULDER, DOWN TO THE
VERY TIP OF MY RIGHT HAND FINGERS STAYS
NUMBED AND HURT - 24/7; FOR MORE THAN
30 DAYS NOW.

PLEASE SCHEDULE ME FOR AN APPOINTMENT TO
SEE YOU.

THANKS.   You are scheduled in June.
                    Dr Kendall M.D. N   4/28/10

MR. ASH BAKRE     #784509       BETO 1
C-1-20 B                    ADS U/A MEDICAL

RE: AN ADVISORY EXHIBIT F

**SUBJECT:** State briefly the problem on which you desire assistance.

DEAR DR. D. KENDALL,

FOR BREVITY, CLARITY AND RECORD PURPOSE, KINDLY REITERATE WHAT
YOU VERBALLY TOLD ME ON OR ABOUT AUGUST 6, 2018, AND SEPTEMBER
4, 2018, THAT QUOTE: "UNLESS YOU'RE PARALYZED, THE GEO MEDICAL -
MATTRESS WILL NOT BE ISSUED TO YOU."
AND ALSO, THAT DR. ABRON IS NOT AUTHORIZED TO MAKE ANY ORDERING
OF SAID GEO MATTRESS FOR INMATE.
THANK YOU.

Name: MR. ASH B. BAKRE                No: 784509        Unit: BE TO 1

Living Quarters: C-1-20B        Work Assignment: ADS U/A MEDICAL

**DISPOSITION:** (Inmate will not write in this space)

It is my understanding that Geo mats are for patients in
the infirmary or patients/offenders with actual paralysis.
I do not issue Geo mats. Dr. Abron makes recommendations
for the unit provider to decide. D. Kendall, MBBS
3/6/18

I-60 (Rev. 11-90)

## Texas Department of Criminal Justice

*EXHIBIT G*
*STEP 1*
*EXHIBIT G*

**OFFENDER GRIEVANCE FORM**

CI-04

**OFFICE USE ONLY**

Grievance #: 2019057003
Date Received: NOV 16 2018
Date Due: 12-31-18
Grievance Code: 608
Investigator ID #: I244
Extension Date: _____
Date Retd to Offender: DEC 2 8 2018

Offender Name: Mr. Ash B. Bakre     TDCJ # 00784509

Unit: BETO 1     Housing Assignment: C-1-20-B

Unit where incident occurred: BETO 1

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? MR. JASON ARMSTRONG, DR. KENDALL, DR. CLAYTON   When? AUG, JULY, SEPT, OCT

What was their response? DR. DEBORAH KENDALL SAID I'LL HAVE TO BE PARALIZED FIRST BEFORE I COULD GET GEO MATT

What action was taken? NOTHING AS OF THE DATE OF THIS GRIEVANCE •     NOV 16 2018

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

This is an unresolved medically related matter which has been causing me daily extended crucial agonizing pain, unrest and emotional damage.

My medical record will show that I had been complaining about my neck, lower back and thighs pain from sleeping on the TDCJ-ID issued regular mattress, and my urgent need for a Medical GEO Foam Mattress since 2014, to no avail.

My Laboratory EMR will also show that surgical hardware with multiple screws barely held my neck together at C3, C4, C5 & C6 segment.

My Lumber Spine is also messed up at all levels worst at L4-L5.

On or about Friday, March 16, 2018, the said regular mattress compression injury to my spinal cords got real worst while I was sleeping. I woke up to an excruciating pain associated with electric discharges emitting directly from my lower Cervical spine, then to the edge of my right shoulder and radiated straight into my middle finger.

My entire right arm became very weak. Numbness, electric discharges and frozen pain engulfed my right shoulder and arm down to my right fingers tips.

Some nights I'd wished that my right hand is detachable so that I can just plucked it off of my body due to the severity of the pain. Three of my right hand fingers were folded over — not functioning ever since March 16, 2018.

On or about April 4, 2018, Dr. Hague gave me a referral to the Beto 1 Units physical therapy department for treatment of my (damaged) injured nerve root.

On June 13, 2018, I was evaluated by Dr. James Bjornson and Dr. Clinton Herring.

On June 28, 2018, I started my physical therapy session with both Dr. Bjornson, and Dr. Herring.

On Thursday, October 04, 2018, I was discharged from the physical therapy treatment

NOV 16 2018

**I-127 Front** (Revised 11-2010)     **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**     (OVER)

Appendix F

without any recovery from my injured nerve root, or restoration of my hand and the bent three fingers.

On September 11, 2018, I approached Dr. Deborah Kendall, (the head physical therapist of Beto 1 Unit) for the third time in respect of obtaining a Medical GEO mattress. Dr. Kendall bluntly told me, quote: YOU'RE NEVER GONNA GET IT, YOU'LL HAVE TO BE PARALIZED FIRST.''

On October 4, 2018, Dr. James Bjornson, informed me that someone will be coming to talk to me at the end of October, 2018, about the Medical GEO mattress. As of the date of this grievance, I have not seen anyone come talk to me about the said GEO Mattress. NOV 1 6 2018

**Action Requested to resolve your Complaint.**
IT IS VERY SCARY FOR ME TO LAY ON MY PRESENT MATTRESS AT NIGHT OR ANY TIME AT ALL, FOR FEAR OF THE INEVITABLE PAIN THAT AWAITS ME. I NEED TO BE ISSUED A GED MATTRESS, AND AN APPOINTMENT TO SEE NEUROSURGEON ABOUT MY INJURY. THANKS!

**Offender Signature:** _____ **Date:** NOVEMBER 12, 2018

**Grievance Response:**

Record review shows you were seen by physical therapy on 10/2/18 for replacement of medical boots and on 10/4/18 for complaint of neck pain, right scapula pain, right upper extremity pain and numbness. You stated you had cervical fusion in 1999, and that symptoms were worsening. Your goals were to decrease pain level & be able to return to writing. You reported minimal pain that day, but numbness in right wrist/fingers. You were instructed on in house exercise program and discharged from physical therapy. There was no mention of geo mattress at either appointment. You may not get what you want, but you will receive what is medically indicated based on the professional opinion of provider rendering your care. This grievance is denied.

**Signature Authority:** _____ Michael Sizemore SPM **Date:** 12-27-18

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**      *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance #_____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** _____

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:_____ |
| Grievance #:_____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials:_____ |
| Grievance #:_____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials:_____ |
| Grievance #:_____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

EXHIBIT H RE: NEEDED WRIST BRACE

**SUBJECT:** State briefly the problem on which you desire assistance.

MR. BJORNSON, EXHIBIT H RE: NEEDED WRIST BRACE

BETWEEN JULY 2018, AND OCTOBER 2018, YOU ASSURED ME NUMEROUS TIMES

THAT YOU PLACED AN ORDER FOR MY NEEDED RIGHT-HAND WRIST

BRACE.

HOWEVER, ON NOVEMBER 28, 2018, MS. FRESNER CHECKED HER

OFFICE COMPUTER AND CONFIRMED THAT SAID ORDER WAS (NOT-SHOWING)

NEVER MADE.

WHAT IS GOING ON MR. BJORNSON???

Name: MR. ASH B. BAKRE          No: 784509      Unit: BETO 1

Living Quarters: C-1-20 B          Work Assignment: ADS U/A MEDICAL

**DISPOSITION:** (Inmate will not write in this space)

Wrist Braces on order
will begin indirea Subler
orba arrives
M. Goldman, RN w
                    J. Bjornson PT
                    12-5-2018

I-60 (Rev. 11-90)

RECEIVED
NOV 30 2018

EXHIBIT I

SUBJECT: State briefly the problem on which you desire assistance.

DEAR DR. KENDALL,

AS YOU INSTRUCTED, PLEASE GIVE ME AN UPDATE ON MY REFERRAL TO THE

PHYSICAL MEDICINE REHABILITATION (PMR) IN RESPECT OF MY NEEDED GEO MEDICAL

FOAM MATTRESS.

I HAVE NOT HEARD FROM THE PMR SINCE DR. HAROLD CLAYTON M.D'S REFERRAL DATE

OF SEPTEMBER 19, 2018. (2 MONTHS AND 16 DAYS).

I THANK YOU.

Name: MR. ASH B. BAKRE          No: 784509          Unit: BETO 1

Living Quarters: C-1-04 B          Work Assignment: ADS V/R MEDICAL

DISPOSITION: (inmate will not write in this space)

It was denied. You have not had
any recent surgery per Dr. Abron.
You are not eligible for a Geo mat.
[signature] M. Goldman, RN
12/12/18

RECEIVED
DEC 0 8 2018

I-60 (Rev. 11-90)

# EXHIBIT I

**Texas Department of Criminal Justice**

# STEP 2     OFFENDER
## GRIEVANCE FORM

FEB 2 0 2019

**OFFICE USE ONLY**

Grievance #: 2019037603

UGI Recd Date: 1-15-19

HQ Recd Date: JAN 23 2019

Date Due: 03/01/2019

Grievance Code: CC08

Investigator ID#: I0352

Extension Date: _____

**Offender Name:** Mr. Ash B. BAKRE     **TDCJ #** 00784509

**Unit:** Beto 1     **Housing Assignment:** C-1-04-B

**Unit where incident occurred:** Beto 1

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

**Give reason for appeal (Be Specific).**   *I am dissatisfied with the response at Step 1 because...*

The response given by Mr. Michael Sizemore - IS INADEQUATE, being that my Medical boots replacement was on 11/28/2018, as opposed to his reported 10/2/2018. Moreover, my request for a Medical Foam "GEO" Mattress spanned from September 30, 2014, up until present date, and not just two days period of 10/2/18, & 10/4/18, as reported by Mr. Michael Sizemore.

However, my following Medical (records) notes will support my earnest complaints regarding my pre-existing and newly sustained injury to my neck, right shoulder, and right hand - as a result of the regular Mattress's damage to my (neck) Cervical Root nerve root; and also my urgent need for a GEO mattress during the course of my Physical Therapy Treatment sessions of 6/13/2018, through 10/4/2018:

JULY 19, 2018 : GAVE Mr. JASON ARMSTRONG (MY ADS CASEWORKER), GAVE ME AN ADVISE ON HOW TO GET A REFERRAL TO THE PHYSICAL MEDICINE REHABILITATION [PMR] FOR MY "GEO" MEDICAL FOAM MATTRESS;

AUGUST 7, 2018 : DR. HAROLD CLAYTON, M.D. GAVE ME A REFERRAL FOR THE "GEO" MATTRESS;

AUGUST 6, 2018 & SEPTEMBER 4, 2018, : DEBORAH KENDALL (BETO 1 PHYSICAL THERAPIST) VERBALLY TOLD ME THAT I HAVE TO BE ACTUALLY PARALYZED TO GET A GEO MATTRESS;

SEPTEMBER 6, 2018, : DEBORAH KENDALL (P.T.) WROTE : "IT IS MY UNDERSTANDING THAT "GEO" MATTRESS ARE FOR PATIENTS IN THE INFIRMARY OR PATIENTS/OFFENDERS WITH ACTUAL PARALYSIS. I DO NOT ISSUE GEO MATS. DR. ABRON MAKES RECOMMENDA- TIONS FOR THE UNIT PROVIDER TO DECIDE."

P.T.O.

**I-128 Front** (Revised 11-2010)     **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**     (OVER)

Appendix G

SEPTEMBER 19, 2018; DR. HAROLD CLAYTON, M.D., GAVE ME ANOTHER REFERRAL FOR
THE GEO MATTRESS TO THE PMR;
SEPTEMBER 25, 2018; DR. ABRON OF PMR DENIED DR. CLAYTON'S REFERRAL,
CITING "NO RECENT NECK/BACK SURGERY." DR. ABRON DID NOT EVEN
EVALUATE IN PERSON AT ALL.

This Grievance is timely filed in accordance with the Prison Mailbox rule on 1-10-19

**Offender Signature:** _____  **Date:** January 10, 2019

**Grievance Response:**

A review of the medical grievance and documentation has been completed regarding your medical complaint you are in agonizing pain due to back/neck injuries and are being denied a geo matt. To remedy this, you are requesting the geo matt to assist with your daily pain and discomfort.

An appellate review of the medical grievance and clinical record indicates the response at Step 1 is appropriate. Upon further review of your electronic health records, you were referred to physiatrist (PMR) on 07/19/2018 regarding a geo mattress, however the referral was denied due to no recent neck/back surgeries. You received shoe inserts and medical boots on 11/28/2018. No care has been denied or delayed as you have received adequate access to care. Furthermore, back and neck pain are not listed on your chronic care problem list.

For future reference, please see Correctional Managed Health Care (CMHC) policy G-59.3 regarding medical prosthesis and orthotic devices. This policy should answer any questions or concerns you may have regarding geo matts. No further action is warranted at this time through the grievance process.

**Signature Authority:** _____

STEP II MEDICAL GRIEVANCE PROGRAM
OFFICE OF PROFESSIONAL STANDARDS
TDCJ HEALTH SERVICES DIVISION

**Date:** 1/25/19

**Returned because:**   *Resubmit this form when corrections are made.*

☐ 1. **Grievable time period has expired.**

☐ 2. **Illegible/Incomprehensible.***

☐ 3. **Originals not submitted. ***

☐ 4. **Inappropriate/Excessive attachments.***

☐ 5. **Malicious use of vulgar, indecent, or physically threatening language.**

☐ 6. **Inappropriate.***

**CGO Staff Signature:** _____

## OFFICE USE ONLY

| Initial Submission | CGO Initials: _____ |
| --- | --- |
| Date UGI Recd: | |
| Date CGO Recd: | |
| (check one) ____ Screened ____ Improperly Submitted | |
| Comments: | |
| Date Returned to Offender: | |

| 2nd Submission | CGO Initials: _____ |
| --- | --- |
| Date UGI Recd: | |
| Date CGO Recd: | |
| (check one) ____ Screened ____ Improperly Submitted | |
| Comments: | |
| Date Returned to Offender: | |

| 3rd Submission | CGO Initials: _____ |
| --- | --- |
| Date UGI Recd: | |
| Date CGO Recd: | |
| (check one) ____ Screened ____ Improperly Submitted | |
| Comments: | |
| Date Returned to Offender: | |

I-128 Back (Revised 11-2010)                    **Appendix G**